IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA M. GRAY ) | |
| ) | No. 17 CV 1185 |
| Claimant, ) | |
| ) | |
| v. ) | |
| ) | Magistrate Judge Michael T. Mason |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the U.S. Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda M. Gray ("Claimant") filed a motion for summary judgment seeking reversal of the final decision of the Commissioner of Social Security ("Commissioner"), denying her claim for disability benefits. The Commissioner has filed a cross-motion asking the Court to uphold the decision of the Administrative Law Judge ("ALJ"). For the reasons set forth below, Claimant's motion for summary judgment (Dkt. 17) is granted and the Commissioner's motion for summary judgment (Dkt. 24) is denied.

**I. Background**

**A. Procedural History**

Claimant filed her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI) on May 1, 2013, alleging that her disability began on November 4, 2012. (R. 176-85.) Claimant's applications were denied initially and on reconsideration. (R. 85-86, 111-12.) She requested a hearing before an ALJ, which was held on November 2, 2015. (R. 30-65.) On December 7, 2015, the ALJ issued a written decision finding that Claimant was not disabled. (R. 12-29.) On December 13,

1

2016, her request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. (R. 1-7.) This action followed.

Claimant filed an amended complaint on March 23, 2018, in which she states that she filed a second application for DIB and was found disabled with an onset date of December 14, 2016. (Dkt. 30 at 3.) Claimant requested that the Court look at the closed period of April 13, 2014 through December 13, 2016. (*Id.*)

## B. Relevant Medical Evidence

### 1. Examining and Treating Sources

Claimant had multiple x-rays completed in July of 2014, showing mild degenerative changes and mild disc space narrowing of the lumbar spine, multilevel degenerative changes and disc space narrowing of the cervical spine with end plate osteophytes, and mild degenerative change with moderate joint effusion of the left knee. (R. 390-93.) In September of 2014, she was examined and found to have radicular pain and positive straight leg raises on her right side both elevated and supine, as well as reflex loss. (R. 579-81.) In December of 2014, she had more imaging done, where she was found to have multifactorial, multilevel degenerative changes, neural foraminal stenosis, and disc bulging with minimal bilateral facet joint arthropathy. (R. 403.) In January of 2015, more imaging was done of her knees. (R. 558.) Her right knee showed moderate tricompartment degenerative changes with narrowing of the compartments and patellofemoral joint space, osteophytes in all three compartments, and enthesophytes identified. (*Id.*) Her left knee showed moderate tricompartment degenerative changes with narrowing of the compartments and patellofemoral joint space, and evidence of osteophytes in all three compartments. (*Id.*) In July of 2015,

2

Claimant was diagnosed with bilateral lower extremity radiculopathy, and more imaging showed significant loss of disc height, mild three level degenerative disc disease with diffuse disc bulging, and mild facet arthropathy. (R. 552.) In September of 2015, imaging showed disc herniation with spinal stenosis, disc degeneration and herniation, and right upper and lower extremity radiculopathy. (R. 539-40.)

2.  **Consultative Examiner**

Dr. Fauzia A. Rana, M.D., completed a consultative examination on July 16, 2013. (R. 363.) Dr. Rana noted that Claimant was cooperative, had no difficulty in breathing, and had no difficulty in any movement. (R. 364.) In examining her upper extremities, Dr. Rana noted no evidence of redness, warmth, thickening, or effusion of any joint. (R. 365.) Claimant had fist and grip strength of 4/5 on the right hand and 5/5 on the left hand. (*Id.*) She had no difficulty in performing manipulations with either hand, and had full range of motion in the shoulder, elbow, and wrist joints. (*Id.*) Dr. Rana also noted normal muscle strength with no cyanosis, clubbing, or edema. (*Id.*)

In examining her lower extremities, Dr. Rana noted that her ankles, knees, and hips had full range of motion. (R. 365.) Claimant's straight leg raising test was accomplished on the right and left to 90 degrees in both sitting and supine positions. (*Id.*) Dr. Rana again noted normal muscle strength with no cyanosis, clubbing, or edema. (*Id.*) Furthermore, Claimant had no difficulties in any of the performance areas except in hopping on one leg. (*Id.*) Claimant used a cane in the examination. (*Id.*) She walked with a slow gait without limping or staggering and could walk more than 50 feet without the cane. (*Id.*) Her motor power was 4-5/5 on the right side and 5/5 on the left side. (*Id.*) Dr. Rana stated that Claimant had slight residual right-sided weakness with

3

possible degenerative arthritis. (R. 366.) Dr. Rana opined that Claimant could sit, stand, walk, lift, carry, speak and hear without difficulty. (*Id.*)

### 3. Agency Physicians

Dr. Charles Kenney, M.D., completed an RFC Assessment Form based on Claimant's medical records on August 19, 2013. (R. 65-74.) He opined that Claimant could occasionally lift twenty pounds and frequently lift ten pounds. (R. 70.) He further opined that Claimant could stand or walk for about six hours in an eight hour work day, and she could sit for about six hours in an eight hour work day. (R. 71.) Dr. Kenney opined that Claimant would be limited to occasionally climbing ramps/stairs, climbing ladders/ropes/scaffolds, balancing, stooping, kneeling, crouching, and crawling. (*Id.*) Dr. Kenney also found Claimant to be partially credible, noting 4-5/5 strength on the right side, 5/5 strength on the left side with full range of motion in all joints. (R. 72.) Based on the CE exam, Dr. Kenney opined that Claimant could walk 50 feet without her cane. (*Id.*)

On reconsideration, Dr. Vidya Madala, M.D., affirmed Dr. Kenney's assessment with very little discussion. (R. 87-98.)

### C. Claimant's Testimony

Claimant's hearing occurred on November 2, 2015. Claimant appeared at the hearing represented by her attorney. Claimant amended her alleged onset date to April 2014 at this hearing. (R. 15, 60-62.) At the hearing, Claimant testified that she lives with her sisters, aged 54 and 58. (R. 34.) Claimant testified that there are four stairs going into the front of the house and three stairs going into the side of the house. (*Id.*) In order to do laundry, Claimant had to go down approximately ten stairs into the

basement. (*Id.*) Claimant testified that she has not driven since shortly after her stroke in 2012, and she has been told that she should no longer drive due to numbness in her foot. (R. 36.) Claimant testified that she only completed two years of college, and she received a certificate for business machines in high school. (R. 37.) She stated that she stopped smoking in 2010, and she occasionally has a glass of wine. (R. 38.)

Claimant also testified that she was terminated from her job with the United States Postal Service in 2006 due to attendance. (R. 47.) Claimant stated that this was due to her mother having a stroke. (*Id.*) She stated that she was unable to work now due to numbness in her right thigh and foot, falling, and tingling in her head. (*Id.*) She attended physical therapy after her stroke but could not afford further treatment because she did not have insurance. (R. 48.) She stated she was given home exercises to do, but they did not improve her numbness. (*Id.*) Claimant stated that she could only stand for five to ten minutes before pain forces her to lay down or take pain pills. (*Id.*) She testified that she could walk a block but would have to stop due to her right foot. (R. 49.) She stated that she struggled with sitting for too long and would need to lie down on her left side. (*Id.*) She guessed that she could lift or carry at most five pounds. (*Id.*)

Claimant testified that a normal day includes home exercises, watching television, and cooking. (R. 50.) She stated that she often drops things with her right hand and needs assistance taking things out of the oven with her right hand. (*Id.*) She stated she was then diagnosed with tendinitis in her left hand and has a cervical disc that causes her pain. (*Id.*) She also was diagnosed with arthritis in her left and right knee that causes pain with standing and walking. (R. 52.) She also testified to falling about six times since her stroke in 2012. (*Id.*) Claimant further testified to needing her

5

cane when she walks long distances to keep her from falling. (R. 53.) She stated that if she were to fall she could not get up on her own, so she uses the cane to keep herself from falling. (R. 54.) She also stated that she struggled with sleeping due to pain. (*Id.*)

**D. Vocational Expert Testimony**

Vocational Expert ("VE") Sarah Gibson also appeared at the hearing. The ALJ asked the VE to consider someone of Claimant's age, education, and work history who could work at the light exertional level and limited to occasional ladders, ropes, scaffolds, ramps, stairs, balancing, stooping, kneeling, crouching, and crawling. (R. 58.) The VE stated that such an individual would be capable of performing all of Claimant's past work except for the routing clerk and the mail clerk positions. (*Id.*) Next, the ALJ asked the VE to keep the light exertional level, but with no ladders, ropes, scaffolds, kneeling, crouching, crawling, stairs, or ramps; and occasional balancing and stooping. (*Id.*) The VE stated that Claimant could still do all past work as performed except for the routing clerk and mail clerk positions. (R. *Id.*) The ALJ then asked the VE to add the limitation of frequent bilateral reaching and grasping, and the VE stated that Claimant could do all past work as performed except for the routing clerk and mail clerk positions. (R. 59.) Finally, the ALJ asked the VE to change the exertional level to sedentary with occasional bilateral reaching and grasping. (*Id.*) The VE stated that this would eliminate all past work. (*Id.*)

**II. Analysis**

**A. Standard of Review**

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940

(7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). We must consider the entire administrative record, but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (quoting *Steele*, 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence," he "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must "sufficiently articulate [his] assessment of the evidence to assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**B. Analysis under the Social Security Act**

In order to qualify for SSI or DIB, a claimant must be "disabled" under the Social Security Act (the "Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a

claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The claimant has the burden of establishing disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

Here, the ALJ applied the five-step process to reach his decision denying Claimant's application for benefits. Prior to step one, the ALJ found that Claimant met the insured status requirements through December 31, 2016. (R. 17.) At step one, the ALJ determined that Claimant has not engaged in substantial gainful activity since April 13, 2014, the amended alleged onset date. (*Id.*) At step two, the ALJ determined that Claimant had the following severe impairments: late effects of injury to nervous system, degenerative disc disease, degenerative joint disease, and obesity. (*Id.*) The ALJ found that Claimant's hypothyroidism, essential hypertension, and affective disorder were non-severe. (R. 18.) The ALJ also stated that Claimant's speech problems were a non-medically determinable impairment. (R. 19.) At step three, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Commissioner's listed impairments. (R. 19.)

8

The ALJ went on to assess Claimant's RFC, finding Claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except she can never climb ladders, ropes, or scaffolds. She can never kneel, crouch, crawl, or climb ramps or stairs. She can occasionally balance and stoop. She can frequently bilaterally reach and grasp. (R. 20.) At step four, the ALJ determined that Claimant could perform her past relevant work as an order clerk, mail clerk, routing clerk, hand packager, and order picker. (R. 23.) Because the ALJ found Claimant capable of performing past relevant work, she did not move on to step five.

Claimant now argues that the ALJ's decision is not supported by substantial evidence and requires remand. Claimant argues that the ALJ erred in her Listing analysis at step three, that the ALJ erred in failing to submit new evidence to a medical expert, that the ALJ erred in her subjective symptom determination, and that the ALJ failed to properly consider Claimant's past work. We address Claimant's arguments below, ultimately finding that the ALJ's opinion should be remanded.

**C. The Court Will Limit Its Review to April 13, 2014 through December 10, 2015**

As an initial matter, Claimant argues that the court should limit its review to the amended onset date – April 13, 2014 – through the date Claimant was found disabled – December 14, 2016. However, judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Judicial review is limited to the final decisions of the Commissioner, and the ALJ's decision on December 10, 2014, is the final decision of the Commissioner. 42 U.S.C. §405(g), (h). As such, the Court cannot

look to evidence that came after the ALJ's findings. The Court will limit its review to the period covered by the Commissioner's final decision in this case. That time period is from April 13, 2014 through December 10, 2014, and is the time period the ALJ reviewed.

**D. The ALJ Erred in Failing to Submit New and Potentially Decisive Medical Evidence to Medical Scrutiny.**

Claimant contends that the ALJ failed to submit significant evidence to state agency consultants or other medical sources for review. In doing so, Claimant contends that the ALJ erred in her step three evaluation by determining Claimant did not meet or equal a Listing without any medical support. The ALJ notes that she considered listings 1.00 (musculoskeletal system); 1.02 (major dysfunction of a joint(s) (due to any cause)); 1.04 (disorders of the spine); and 11.04 (vascular insult to the brain). (R. 19.) State agency doctors reviewed Claimant's medical record in 2013 and in April of 2014. (R. 75-98.) The state agency doctors considered listings 11.04 and 12.04 (affective disorders). (R. 69, 105.) Claimant argues that the ALJ failed to submit multiple subsequent x-rays and MRIs to a medical source.

As discussed above, Claimant had multiple x-rays completed in July of 2014, after the state agency doctors reviewed the record. (R. 390-93.) These x-rays showed mild degenerative changes and mild disc space narrowing of the lumbar spine. (*Id.*) They also showed multilevel degenerative changes and disc space narrowing of the cervical spine with end plate osteophytes. (*Id.*) Finally, her left knee showed mild degenerative changes with moderate joint effusion. (*Id.*) Later, in September of 2014, she was examined and found to have radicular pain and positive straight leg raises on

her right side both elevated and supine, as well as reflex loss. (R. 579-81.) In December of 2014, after more imaging, she was found to have multifactorial, multilevel degenerative changes, neural foraminal stenosis, and disc bulging. (R. 403.) In January of 2015, her right knee showed moderate tricompartment degenerative changes with narrowing of the compartments and patellofemoral joint space, osteophytes in all three compartments, and enthesophytes identified. (R. 558.) Her left knee showed moderate tricompartment degenerative changes with narrowing of the compartments and patellofemoral joint space, and evidence of osteophytes in all three compartments. (*Id.*) In July of 2015, Claimant was diagnosed with bilateral lower extremity radiculopathy, and more imaging showed significant loss of disc height, mild three level degenerative disc disease with diffuse disc bulging, and mild facet arthropathy. (R. 552.) In September of 2015, imaging showed disc herniation with spinal stenosis, disc degeneration and herniation, and right upper and lower extremity radiculopathy. (R. 539-40.) Claimant argues these medical records support equaling Listing 1.04, but the ALJ determined Claimant did not equal 1.04 without any support from a medical opinion.

The state agency doctors did not consider Listing 1.04. (R. 92, 93.) However, this is possibly because the state agency doctors did not have this subsequent evidence in order to consider Listing 1.04. Listing 1.04 includes disorders of the spine, which was not at issue at the time the state agency doctors reviewed the evidence. "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart,* 381 F.3d 664, 670 (7th Cir. 2004). *See* 20. C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical

11

findings. … We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."). Here, the ALJ did not consult an expert regarding Listing 1.04. Instead, "the ALJ simply assumed the absence of equivalency without any relevant discussion." *Barnett*, 381 F.3d at 671.

The only medical opinion available to the state agency doctors was the consultative examiner's report. However, that report occurred prior to 2014. It showed full range of motion in Claimant's upper extremities. (R. 363-66.) The consultative examiner opined that Claimant had ride side weakness and possibly some arthritis, but was otherwise capable of sitting, standing, walking, lifting, carrying, speaking, and hearing without difficulty. (R. 366.) This was prior to the state agency findings and the later imaging showing degenerative changes in Claimant's lumbar spine, cervical spine, and knee. The ALJ seems to acknowledge this, at least in part, when she gave some weight to Dr. Rana's consultative examination opinion, finding that evidence post-dating that examination indicated that "the claimant is more limited in her exertional, postural, and manipulative abilities than Dr. Rana contends." (R. 22-23.) However, the state agency doctors were not given the chance to consider listing 1.04, as the consultative examiner had not noticed enough of an impairment to consider the listing. After the consultative examination, Claimant's imaging showed worsening symptoms that warranted consideration of listing 1.04. The ALJ did consider this listing, but she did so without consulting a medical source, which she was required to do.

Moreover, Claimant amended her onset date to April 13, 2014. The ALJ relied on information prior to her alleged onset date to determine she did not meet the listing.

All of the medical evidence that the ALJ failed to submit to medical scrutiny is from her amended onset date through the ALJ's decision. The Commissioner argues that it is Claimant's burden to prove she meets or equals a listing, and that she has not met that burden. Further, the Commissioner asserts that Claimant's subsequent medical imaging does not show any of the requirements of the listing. Specifically, the Commissioner argues that Claimant has not shown through the subsequent evidence that she had evidence of nerve root compression accompanied by sensory or reflex loss, positive straight-leg raising test (sitting and supine), or neuro-anatomic distribution of pain or limited spinal motion. First, the imaging would not show limited spinal motion, reflex loss, or pain. However, Claimant points to positive straight leg raises both elevated and supine. (R. 579-81.) The same examination also showed possible radicular pain (evident of nerve root compression[1]). (*Id.*) She was also diagnosed with bilateral lower extremity radiculopathy in July of 2015, and in September of 2015 she was diagnosed with right upper and lower extremity radiculopathy. (R. 539-40, 552.) Claimant continued to complain of pain, and further imaging showed herniated discs, bulging discs, multi level degenerative disc disease, disc space narrowing, and end plate osteophytes. (R. 390-93, 403, 539-40, 552, 554-55.) Claimant also showed diminished strength in her right arm, numbness, and pain with shoulder motion and a paravertebral muscle spasm. (R. 539, 543, 567, 581.) The Commissioner asserts that because the paravertebral muscle spasm and pain with shoulder motion were not

---

[1] https://www.emoryhealthcare.org/orthopedics/lumbar-radiculopathy.html (accessed October 15, 2018) ("Lumbar radiculopathy may occur when the spinal nerve roots are irritated or compressed by one of many conditions, including lumbar disc herniation, spinal stenosis, osteophyte formation, spondylolithesis, forminal stenosis, or other degenerative disorders.").

13

duplicated elsewhere in the record, the ALJ properly dismissed them as not being severe enough to substitute for the requirements of the listing.  However, as previously stated, the ALJ may not determine whether Claimant has met or equaled a listing on her own.  The ALJ here has not used a medical source to determine whether Claimant has met listing 1.04, and she is required to do so.

Finally, Commissioner asserts that the Seventh Circuit has not held that an ALJ is required to seek new medical expert opinion where a plaintiff fails to produce evidence showing that she medically equals a listing.  This is not what Claimant is arguing.  Claimant argues that the ALJ is required to seek a medical opinion with regards to a medical listing for which Claimant has provided evidence.  Claimant is not requesting a new medical expert opinion in an area where she has failed to produce evidence.  Claimant has provided the evidence through multiple subsequent MRIs and x-rays.  Claimant asserts that the ALJ has acknowledged the evidence for listing 1.04, but the ALJ found that the evidence did not meet or equal the listing.  This is evident in the ALJ's written decision.  (R. 19.)  The Seventh Circuit has ruled on such an issue, and it has found that "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart,* 381 F.3d 664, 670 (7th Cir. 2004).  The ALJ did not do so here, and this requires remand.

## E.  The RFC is Not Supported by Substantial Evidence

Claimant next argues that the ALJ erred in her RFC analysis.  Claimant contends that the ALJ failed to submit numerous MRIs and x-rays to medical scrutiny, and as a result, the RFC analysis is not supported by substantial evidence.  As discussed above,

the state agency doctors did not have multiple MRIs, x-rays, and treating notes when they made their findings. Claimant's musculoskeletal impairments do not become readily apparent until these subsequent MRIs and x-rays are considered. The ALJ must submit "new and potentially decisive medical evidence" to medical scrutiny. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The ALJ here appears to agree that this subsequent evidence was new and potentially decisive, as she gave some weight to the state agency doctors, finding that their RFC was not restrictive enough in light of subsequent evidence. (R. 22.) The Commissioner argues that the ALJ's more restrictive RFC shows that the ALJ considered the subsequent evidence and did not simply accept the state agency doctors' opinions. While the ALJ did consider this subsequent evidence in creating the RFC, she was required to submit the evidence to the state agency doctors in order to comply with the listing requirements, as discussed above. The state agency doctors would then review the updated medical evidence and provide new opinions, which may alter the RFC analysis for the ALJ. Therefore, remand is required in this area as well.

To the extent that Claimant argues that the evidence supports sedentary work and not the light work as provided for in the RFC, this is not an argument which results in remandable error. *See Lopez v. Astrue*, 807 F. Supp. 2d 750, 763 (N.D. Ill. 2011) ("[l]awyers are not allowed to play doctor with the record and to make medical determinations about the significance of medical references ….").

**F. The ALJ's Erred in Her Credibility Determination.**

Next, Claimant asserts that the ALJ's credibility analysis was improper. Claimant argues that SSR 16-3p, 2016 SSR LEXIS 4 should apply instead of SSR 96-7p, 1996

15

SSR LEXIS 4.  Claimant acknowledges that SSR 96-7p, 1996 SSR LEXIS 4 was the correct standard for the ALJ to use at the time of her decision but argues that the Court should use SSR 16-3p, 2016 SSR LEXIS 4, as the appeal postdates SSR 16-3p, 2016 SSR LEXIS 4's effective date of March 28, 2016.  The SSA has stated that Courts should only apply SSR 16-3p, 2016 SSR LEXIS 4 to determinations made on or after March 28, 2016.  *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 N.27 (Oct. 25, 2017).  Because the ALJ's decision was issued on December 7, 2015, the Court will assess the ALJ's findings under SSR 96-7p, 1996 SSR LEXIS 4, which notably is not "patently inconsistent" with SSR 16-3p, 2016 SSR LEXIS 4.  *Shered v. Berryhill,* 16 CV 50482, 2018 U.S. Dis. LEXIS 70972 at *5 (N.D. Ill. April 27, 2018)(internal quotations omitted).

The Courts give ALJ credibility determinations deference based on the ALJ's ability to hear, see, and assess witnesses.  *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012.)  An ALJ's credibility determination will only be overturned if it is patently wrong.  *Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008.)  The ALJ must "explain [his] decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on [his] specific findings and the evidence in the record."  *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011.)

The ALJ found Claimant to be "not entirely credible" based on her ability to live independently and care for herself, the ALJ's observations during the hearing, treatment notes from her physicians, a conservative treatment plan, and Claimant's reports of relief.  (R. 21.)  The ALJ also noted that the consultative examiner found that Claimant had no performance difficulty outside of a mild difficulty hopping on one leg.  (*Id.*)

Claimant takes issue with the ALJ's analysis, arguing that the ALJ only identified pieces of evidence supporting her decision while ignoring related evidence that undermined it. The ALJ may not cherry-pick facts supporting her decision while ignoring evidence to the contrary. *Goble v. Astrue,* 385 Fed. App'x. 558, 593 (7th Cir. 2010). Claimant states that although treatment records do state she was "doing well," the records also list a host of symptoms reported by Claimant. She argues that this undercuts the ALJ's statement that exams were "essentially normal." (R. 21.) The ALJ, however, pulled the language "doing well" and "essentially normal" from the doctor's treating notes regarding her physical assessment. (R. 442, 472.)

Claimant argues that the ALJ improperly considered her activities of daily living ("ADLs") without considering the manner in which she completed ADLs. The ALJ found that Claimant prepares two meals daily, does laundry, washes dishes, cleans the sink, but cannot clean the bathroom or do yard work. (R. 18.) The ALJ also found that she was capable of independent living. (R. 21.) However, claimant testified that she lived with her two sisters and required their help to complete some ADLs. (R. 33-35, 50-52.) Claimant testified that she has trouble with standing, so she mostly bakes and boils to avoid standing to turn food. (R. 50.) She also stated that she has trouble gripping things with her right hand, so she has to have her sister take things out of the oven for her. (*Id.*) She also stated that she cannot get back up off the ground by herself if she falls, and she has trouble with buttoning, picking up small objects, and using her keys to unlock the apartment. (R. 54.) Claimant also stated that she only does laundry and cleaning if she is not stiff, and it takes her three to four hours to complete. (R. 224.) We find that the ALJ misstated Claimant's ability to perform ADLs when she found that she

17

could perform a full range of household tasks without considering the manner in which she performed them. *Fuchs v. Astrue*, 873 F. Supp. 2d 959, 974 (N.D. Ill. 2012) ("the ability to minimally care for oneself does not mean that one can work".)

Claimant also takes issue with the ALJ relying on the consultative examiner to discredit Claimant's subjective complaints, because she only gave the consultative examiner "some weight" due to the exam happening prior to the amended alleged onset date and subsequent evidence showing Claimant to be more limited by her impairments. (R. 21-22.) The Commissioner argues that the consultative examiner's opinion is still relevant because it involved many of the same complaints still at issue. However, the Court has already recognized that multiple x-rays and MRIs occurred after the consultative exam, and those x-rays and MRIs showed worsening musculoskeletal impairments. Such imaging may show a worsening of symptoms that may corroborate Claimant's allegations of pain. The consultative examiner's opinion occurred prior to the amended alleged onset date, and Claimant's impairments may have worsened since the examination. Therefore, the ALJ's reliance on the consultative examiner is misplaced.

## G. The ALJ Properly Considered Claimant's Past Work

Lastly, the Claimant argues that the ALJ erred in failing to properly consider her past work. The ALJ found Claimant could perform her past work as an "order clerk," which the VE classified as sedentary/semi-skilled, but light/semi-skilled as performed by Claimant. (R. 23.) Claimant takes issue with this finding. Claimant asserts that the DOT job description involved extra duties, beyond the way that she actually performed the job. The Commissioner argues that Claimant has waived this argument, and that

even if the argument could be made, Claimant has not argued that she could not perform the job as she previously performed it.

Claimant's objection to the VE's assertion that she could perform past relevant work is untimely. Claimant was represented at the hearing, and therefore she waived this argument when she failed to challenge the VE's testimony at the hearing. *Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002) (a claimant must raise any objections at the hearing). Claimant's counsel questioned the vocational expert on a number of issues but did not ask any questions regarding the order clerk position or its job requirements. (R. 60.) Claimant's counsel was given the opportunity to "challenge the sources supporting the VE's opinion at the hearing but did not raise this issue there … Accordingly, this argument is forfeited." *Owens v. Berryhill*, 2018 U.S. Dist. LEXIS 112063 at *9 (N.D. Ill. 2018).

Even if Claimant could raise this issue now, she has not fulfilled her burden. "The claimant bears the burden of establishing that she is unable to return to her past relevant work." *Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). Claimant argues that the DOT lists more job duties than she testified were required by her past work. However, the VE found that Claimant could perform the job of order clerk both as described in the DOT and also as actually performed by Claimant. (R. 23-24.) Claimant's argument focuses on her possible inability to perform the job as described in the DOT, but she fails to establish that she could not return to the job of order clerk as she previously performed it. She previously performed her job as light/semi-skilled, and therefore would not be found disabled even if she did not perform the job as defined in the DOT. Moreover, the VE testified that Claimant was capable of performing past work

as a mail clerk, routing clerk, hand packager, and order picker, and Claimant does not challenge any of these findings. Even if Claimant could not perform previous work as an order clerk, she was still found capable of performing four other past positions. For these reasons, the ALJ correctly considered Claimant's past work.

**III. Conclusion**

For the foregoing reasons, Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. It is so ordered.

DATED: October 30, 2018

_____

The Honorable Michael T. Mason